**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

GROUP 7500, INC.,

       Plaintiff,

v.                                                      CIVIL CASE NO. 04-60082
                                                       HON. MARIANNE O. BATTANI

KBA NORTH AMERICA, INC.,

       Defendant.

_____/

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Before the Court is Defendant's Motion for Summary Judgment (Doc. #23). Plaintiff has two viable counts in the instant suit: 1) breach of contract, and; 2) breach of an implied warranty of fitness for a particular purpose. Plaintiff alleges that Defendant sold a digital printing press, the 74 KARAT, that was defective, improperly installed, and was not in fact "remanufactured" as held out by Defendant. Plaintiff further contends that Defendant's failure to properly correct the defects constitutes a material breach of the purchase agreement, and that the printing press was not fit for the use or purpose anticipated or reasonably foreseen by KBA. Defendant contends that summary judgment is proper because the purchase agreement explicitly disclaimed any implied warranties and because Plaintiff has produced no evidence that the press was not remanufactured, or that it was improperly installed. Defendants also contend that Plaintiff is seeking indirect, special, incidental, and consequential damages, which are specifically eliminated as a potential remedy under the purchase agreement.

Plaintiff signed a Purchase Agreement with defendant KBA North America, Inc. ("KBA") for the purchase of a 74 KARAT Digital Printing Press on March 29, 2002. Group 7500, Inc. anticipated that the press would be delivered in May, 2002. The press arrived in late July 2002, and installation was completed by mid-August.

After the installation was completed, KBA asked Roger Robinson, president of Group 7500, to "sign off" on the press, indicating, among other things, that the press was in working order, was properly installed, the first salable production run had successfully printed, and that the warranty would begin to run. Robinson testified that he was extremely excited about the new press and the new technologies that it brought to his company, and knowing that there were some additional adjustments and calibrations that needed to be completed, he "signed off." He also signed off because he assumed that the warranty meant that he would have no problems that would not be corrected, and because he was dealing in "good faith." In addition, Bob Gudenau, an employee responsible for the press operation, signed a document acknowledging that the machine was satisfactorily installed.

Within weeks the press began to malfunction when a job of any significant volume was run. Repeatedly, Robinson was forced to call KBA for the assistance of a repair technician. As Group 7500 would wait for a repair technician, jobs were lost and the company was put behind schedule, continuously losing money. The same problems persisted and the press was allegedly never fully operational.

All claims will be analyzed under Vermont law in accord with a choice of law provision in the purchase agreement.

## II.  STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

As the United States Supreme Court has ruled:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact.  See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002).  "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue.  FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002).  "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict."  Anderson v. Liberty Lobby Inc., 477 U.S. 242,  256 (1986).  The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor.  See Hunt v.

Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)(citation omitted)(quoting Black's Law Dictionary 881 (6th ed. 1979)). To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, 477 U.S. at 249-50. "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The evidence itself need not be the sort admissible at trial. Tinsley v. General Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000). However, the evidence must be more than the nonmovant's own pleadings and affidavits. Smith v. Campbell, 250 F.3d 1032. 1036 (6th Cir. 2001). The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant. Anderson, 477 U.S. at 252.

### III. ANALYSIS

#### A. Plaintiff's Breach of Contract Claim.

Plaintiff claims that by failing to provide a "remanufactured" press and by improperly

4

installing the press that was delivered, Defendant materially breached the contract. Roger Robinson testified that he was not confident about the refurbishment and the installation at the time he signed off on the machine. He also testified that when he and his employees were able to open the machine, it was far more worn and dirty than a "refurbished" machine should be. Each of these observations allegedly call into question the installation and whether the press was actually remanufactured.

Defendants, on the other hand, have submitted the affidavit and remanufacturing report of the technician that worked on the press in KBA's plant in Germany. Defendant also points out that in both Robinson's and Gudenau's deposition testimony, both admitted: that they did not know what made a press remanufactured, Def.'s Ex 2, Dep. of Robinson at page 119, Def.'s Ex. 3, Dep. of Gudenau at pages 239-241; what steps were taken in the remanufacturing process, Def.'s Ex 2, Dep. of Robinson at page 111, Def.'s Ex. 3, Dep. of Gudenau at pages 239-241, and; that neither was an expert in determining whether a press had been remanufactured, Def.'s Ex 2, Dep. of Robinson at pages 135, 243-44, Def.'s Ex. 3, Dep. of Gudenau at page 240.

In essence, Plaintiff relies on the opinion of Group 7500 President Roger Robinson that because the press malfunctioned and had many recurring problems, that it was not actually remanufactured. Plaintiff points to his forty years of experience in the printing industry to support this opinion. But merely because the press did perform to his expectations, and was dirty inside, is not the type of probative evidence that establishes KBA breached the contract by not actually delivering a remanufactured press to Plaintiff. Summary judgment is appropriate where affidavits contain inadmissible hearsay evidence, and "the statements contained therein are nothing more than rumors, conclusory allegations and subjective beliefs which are wholly

5

insufficient evidence to establish a claim" as a matter of law. Mitchell v. Toledo Hosp., 964 F.2d 577, 584-85 (6th Cir. 1992). Plaintiff has identified no other witnesses that can testify whether the press was actually remanufactured, used, or refurbished. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 249-50. Even looking at Plaintiff's evidence in a most favorable light, the evidence is merely colorable, but is not significantly probative. Robinson's "conclusory allegations and subjective beliefs . . . are wholly insufficient evidence to establish a claim of" breach of contract. Mitchell, 964 F.2d at 584-85.

To support its claim that Defendant did not properly install the press, Plaintiff again points to the testimony of Robinson that he was not confident about the remanufacturing and installation of the press, even though he signed acknowledgments to that effect, to support the breach of contract claim.

To refute Plaintiff's allegation, Defendant submitted the affidavit of the technician that demonstrated the press's capabilities and who was responsible for the installation to support its motion for summary judgment. Attached to his affidavit are copies of the Safety Sign-Off, Demonstration Sign-Off, First Commercial Run Acknowledgment, and Press Acceptance Form. Each of these documents was signed by Gudenau and/or Robinson during the demonstration process that spanned August 13 - 16, 2002. Def.'s Ex. 3, Affidavit of Harper. Robinson testified that he signed these documents because the press seemed to be working, but that he was not fully confident because they had not yet set the press to the parameters they intended to use. Dep. of Robinson, pages 121-22. Robinson also testified that he signed off in good faith with the belief that if anything went wrong, that Defendant would ameliorate the situation. Id. Based on this

testimony, Plaintiff asserts that the documents were signed, but disputes that the installation was acceptable.

Simply put, if Robinson and Gudenau had doubts about the installation, they should not have signed documents that acknowledged the customer was satisfied with the installation, and that the installation was done correctly. The signed documents flatly contradict the subjective feelings of Plaintiff's agents. There are no allegations that the documents were signed under duress, fraud, or other impropriety. Therefore, there is no basis to attack the validity of Plaintiff's admission that the press was properly installed. Further, there is no evidence that the press was installed improperly other than the subjective feelings of Robinson and Gudenau, and the fact that the press suffered from numerous malfunctions. However, simply pointing to the fact that the press malfunctioned often, is not sufficient evidence upon which a jury could reasonably find that the press was improperly installed. Anderson, 477 U.S. at 252. Therefore, summary judgment is proper.

### B. Plaintiff's Breach of Implied Warranty Claim.

Because additional adjustments and calibrations had to be made to the press, Plaintiff asserts that the press was not in fact fully operational on August 16, 2002, the date Plaintiff's agents signed documents accepting the machine and agreeing that it was fully operational. Plaintiffs contend that once these calibrations were made and a normal volume of printing was done on the machine, the machine failed to operate in the proper manner. KBA was immediately notified of the problem and repeatedly attempted to fix the problem to no avail. Plaintiff contends that the exclusive remedy found in the warranty cannot fail of its essential purpose. Plaintiff claims the essential purpose of the warranty in this case was to provide Group 7500

with an operational 74 KARAT printing press. Despite the numerous repairs and assistance given to Group 7500, Inc., the press does not function properly. The press was not fully functioning inside the one-year warranty period and it is not functioning today. Plaintiff contends that it is unconscionable as a matter of law that the buyer of a defective good would be left without a remedy and that the purchase agreement's disclaimer of all implied warranties is unconscionable.

The purchase agreement states: "this is a limited warranty, except as set forth herein and except as to title. There are no implied warranties or any affirmation of fact or promises by seller in reference to the equipment, or to merchantability, fitness, infringement, or otherwise, which extend beyond the equipment description in part of this agreement." Def.'s Ex. A, page KBA00003 & KBA00009-00010. Plaintiff does not dispute that the purchase agreement's disclaimer was not conspicuous. Instead, Plaintiff argues that the exclusive remedy found in the purchase agreement failed its essential purpose and is unconscionable.

In support of its argument, Plaintiff cites a case in which the Vermont Supreme Court held that revocation of acceptance is an available remedy against a manufacturer whose product comes with an express warranty, passed on to the consumer through the seller, if that product has "substantial defects that continue to exist after a reasonable number of repair attempts." Gochey v. Bombardier, Inc., 572 A.2d 921, 923 (Vt. 1990). In Gochey, a snowmobile buyer desired to revoke his acceptance after the manufacturer refused to extend an express warranty that was still in effect. The consumer demanded an extension of the warranty after the last repair, a repair which the plaintiff felt did not address the underlying cause of the product's malfunctioning ways. Gochey is inapposite here because Plaintiff is suing under an implied warranty theory, a

8

type of warranty that the purchase agreement expressly disclaimed.

Plaintiff also contends that it would be unconscionable to leave a plaintiff without a remedy; however, Plaintiff not only had a remedy, but a choice among remedies for a one-year term. Plaintiff had an option to have Defendant repair or replace defective parts for one year, receiving a refund of their purchase price after removing the press, or revoking acceptance after a reasonable number of repair attempts were made. Further, Plaintiff has presented no authority or argument to support the contention that a limitation of warranties clause is unconscionable. To the contrary,

> In order to effectively disclaim or modify a warranty of merchantability, the disclaimer "must mention merchantability and in the case of a writing must be conspicuous . . . ." 9A V.S.A. § 2-316(2). "[T]o exclude or modify any implied warranty of fitness [for a particular purpose] the exclusion must be by a writing and conspicuous." Id.

Corey v. Furgat Tractor & Equipment, Inc., 520 A.2d 600 (Vt. 1986). Plaintiff does not dispute that the limitation of warranties was in writing and conspicuous.

Nor was any argument made to show that Plaintiff signed the purchase agreement, and the limitation of warranties clause, due to unfair surprise or oppression. The principle of unconscionability "is one of the prevention of oppression and unfair surprise (Cf. Campbell Soup Co. v. Wentz, 172 F.2d 80, 3d Cir. 1948) and not of disturbance of allocation of risks because of superior bargaining power." VT. STAT. ANN. tit. 9A, § 2-203, cmt.1 (2004). "Absent a showing of unfair surprise or oppression, the disputed term cannot be invalidated as unconscionable . . . ." Wilk Paving Inc. v. Southworth-Milton, Inc., 649 A.2d 778, 784 (1994).

> Dealing with the issue of unfair usrprise, (sic) the court in Williams v. Walker-Thomas Furniture Co., 121 U.S. App. D.C. 315, 350 F.2d 445 (1965), phrased the question as follows: Did each party to the contract, considering his obvious education or lack of it, have a reasonable opportunity to understand the

terms of the contract, or were the important terms hidden in a maze of fine print and minimized by deceptive sales practices? (350 F.2d at 449).

<u>Lamoille Grain Co., Inc. v. St. Johnsbury and Lamoille County R. R.</u>, 369 A.2d 1389, 1391 (Vt. 1976). Robinson had forty years of experience in the printing industry, and had a fair opportunity to understand the terms of the contract. Robinson consulted with an attorney regarding the purchase agreement. Def.'s Ex. 2, Dep. of Robinson at page 155. Further, Plaintiff engaged in negotiation with KBA over the terms of the purchase agreement. There is no evidence that Plaintiff was forced to accept the terms of the contract. <u>Lamoille Grain Co.</u>, 369 A.2d at 1391. Thus, there is no evidence to support the claim that the contract term was unconscionable.

Plaintiff was faced with limited remedies, and instead of getting a refund of their purchase price after removing the press or revoking acceptance of the press, it chose to have the press repaired. <u>See</u> <u>Wilk Paving Inc. v. Southworth-Milton, Inc.</u>, 649 A.2d 778, 781-2 (1994). It is now not satisfied with its chosen course of action. However, the terms of the purchase agreement sealed off the relief Plaintiff now seeks.

Because Plaintiff's claims will be dismissed, the issue of damages need not be reached.

**IV.   CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED.**

<u>s/Marianne O. Battani</u><br>
MARIANNE O. BATTANI<br>
UNITED STATES DISTRICT JUDGE

DATED: <u>September 14, 2005</u>

**CERTIFICATE OF SERVICE**

Copies of this Order were mailed to Kenneth J. Hardin, Gregory L. Curtner and Robert O'Neill on this date by ordinary mail and electronic filing.

s/Bernadette M. Thebolt  
DEPUTY CLERK
